CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

2/22/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ASHTON S.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:21-cv-1 |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Ashton S. ("Ashton") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. § 1381-1383f. Ashton alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to account for Ashton's frequent need to use the bathroom; (2) failing to account for her severe migraines; and (3) failing to establish a link between her mental impairment and the restriction to non-production work.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENYING** Ashton's Motion for Summary Judgment (Dkt. 11).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Ashton failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Ashton filed this claim for SSI on May 8, 2019, claiming her disability began on April 18, 2018, due to physical and mental impairments. R. 15, 200. Specifically, Ashton claims

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

disability due to Crohn's disease, migraines, bipolar disorder, borderline personality disorder, and post-traumatic stress disorder (PTSD). R. 204.

The state agency denied Ashton's claim at the initial level of administrative review on August 21, 2019, and upon reconsideration on December 20, 2019. R. 129–142, 143–149. On September 14, 2020, ALJ Suzette Knight held a hearing to consider Ashton's claim for SSI. R. 33–70. Ashton was represented by counsel at the hearing, which included testimony from vocational expert Mitchell Schmidt. Id. On September 30, 2020, the ALJ entered her decision analyzing Ashton's claim under the familiar five-step process[4] and denying her claim for SSI benefits.[5] R. 15–27.

The relevant period for Ashton's SSI claim is from her May 8, 2019 application date through the ALJ's decision on September 30, 2020. See 20 C.F.R. § 416.202 (explaining that a claimant is not eligible for SSI until, among other factors, the date she files an application for SSI benefits); 20 C.F.R. § 416.501 (stating that a claimant may not be paid SSI for any period that precedes the first month she satisfies the eligibility requirements, which cannot pre-date the date on which an application was filed).

The ALJ found that Ashton had not engaged in substantial gainful activity since May 8, 2019. R. 17. The ALJ determined that Ashton suffered from the severe impairments of Crohn's

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Ashton was 27 years old on her alleged onset date and 29 years old on the date of the ALJ's opinion, making her a younger person under the Act. R. 26.

3

disease, degenerative disc disease of the lumbar spine, migraine headaches, obesity, bipolar disorder, borderline personality disorder, and PTSD. Id. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18–19. The ALJ also considered Ashton's alleged vertigo, fluid retention, heart abnormalities, gastroesophageal reflux disease ("GERD"), restless leg syndrome, plantar fasciitis, and learning disability, but did not find them to be severe impairments. R. 18.

The ALJ concluded that Ashton retained the residual functional capacity ("RFC") to perform light work, except she can stand and/or walk for four hours in an eight-hour day. She can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. R. 21. She can occasionally climb ladders, ropes, or scaffolds. Id. She can tolerate occasional exposure to respiratory irritants, vibration, and hazards, such as unprotected heights and moving mechanical parts. She could tolerate no more than moderate noise level. Id. She can maintain concentration, persistence, and pace to perform unskilled work at a nonproduction pace, defined as an assembly line, in two-hour increments to complete an eight-hour day. Id. She can interact with coworkers and the public occasionally. Id.

The ALJ determined that Ashton had no past relevant work, but could perform work that exists in the national economy, such as scrap sorter, raw juice weigher, and paper pattern folder, and thus, the ALJ determined that Ashton was not disabled. R. 27. Ashton appealed the ALJ's decision. The Appeals Council denied her request for review on December 16, 2020. R. 1–6.

## **ANALYSIS**

Ashton alleges that the ALJ's RFC finding failed to account for her bathroom use and migraines, and failed to explain how a limitation to non-production work accounted for her moderate limitation in concentration, persistence, and pace.

4

### A. Medical History Overview

1. <u>Medical Treatment</u>

Ashton had regular medical visits for symptoms related to her Crohn's disease throughout the relevant period. On May 16, 2019, Ashton went to the emergency room for persistent lower abdominal pain that was on and off for two months, diarrhea, and nausea every time she eats. R. 650. Louis Amblard, M.D., found that Ashton had normal laboratory tests, nonspecific colitis, and treated her abdominal pain with antibiotics. R. 651–652. On August 5, 2019, Ashton visited the emergency room for complaints of pain, nausea, vomiting, and diarrhea, which may have been caused by her new medication. R. 1629–1630. Eric Kline, M.D., determined that Ashton had normal bowel gas pattern, no abnormal mass effect, and moderate fecal matter in the colon. R. 1630. Ashton's diarrhea decreased by the end of 2019. On December 29, 2019, Ashton visited the emergency room for abdominal pain. Lance Warren, M.D., found that she had a normal abdominal exam and no evidence of bowel obstruction. R. 1521, 1529.

On January 26, 2020, Ashton went to the emergency room complaining of severe abdominal pain and diarrhea for two days that were "worse than normal." R. 1507. Ashton's symptoms improved significantly with steroids and she was discharged as "stable, comfortable, and in no acute distress." R. 1508. On February 18, 2020, Ashton returned to the emergency room complaining of abdominal pain and bloody diarrhea with moderate severity over the past several days. R. 1495. Ashton reported that her Crohn's disease had been doing well on Humira. Michael Dunlop, M.D. treated Ashton with IV fluids, morphine and Compazine, and started her on additional medications. She was discharged in stable condition. R. 1496. On April 27, 2020, Ashton visited gastroenterologist Larry Clark, Jr., M.D., for abdominal pain. Ashton reported intermittent abdominal pain for the past year and averaging about five stools a day. R. 1307.

Ashton reported no diarrhea or other issues, but severe pain everywhere. Id. Dr. Clark noted that Ashton sees pain management doctors and had no evidence of acute disease on her last colonoscopy. R. 1309.

On June 11, 2020, Ashton went to the emergency room complaining of abdominal pain with frequent diarrhea and was discharged in stable condition due to an unremarkable evaluation. R. 1452. On July 24, 2020, Ashton returned to the emergency room complaining of vomiting, abdominal pain, back pain, and diarrhea. Thomas Wigboldy, D.O., diagnosed Ashton as having typical symptoms for Crohn's disease. R. 1593.

Throughout the relevant period, Ashton complained about migraines and was prescribed medication to manage and remedy her associated symptoms. On October 7, 2019, Ashton was admitted to Gretna Emergency Services because of a migraine that lasted three to four days. R. 1604–1605. On January 8, 2020, Ashton saw Melissa Ramsdell, NP-C, at CMG Neurology complaining of a migraine without aura with 10/10 in intensity; two to three severe headaches per month lasting at least a day; and dizziness. R. 1235–1236. Ms. Ramsdell discussed with Ashton how to use her current medication to remedy the migraines. R. 1235. In July 2020, Ashton continued taking her prescribed medication to treat her migraines. R. 1181.

From 2019 to 2020, Ashton complained of back pain caused by multilevel disc space narrowing, most pronounced at L5-S1. R. 448. She often complained of back pain in excess of 7/10 on the pain scale. See R. 1115, 1128, 1147, 1411–1412, 1420. On January 28, 2020, Ashton visited physical therapist Shana Harmon and reported having low back pain since she was a child and difficulty standing for long periods. R. 1125. Ms. Harmon treated Ashton with therapeutic exercise, electrical simulation, and hot packs. R. 1126–1127. On July 9, 2020, Ashton had a

consultation with orthopedic surgeon Hamid Hassanzadeh, M.D., who diagnosed low back pain at multiple sites and degenerative disc disease. R. 1095–1097.

There are limited medical records regarding Ashton's mental impairments during the relevant period. In July 2019, Ashton visited Kathi-Ann Starling, M.A. at Horizon Behavioral Health and Ms. Starling determined that Ashton has bipolar disorder and was unable to sustain a job for an extended duration. R. 532.

2. Medical Opinions

On August 21, 2019, state agency physician William Rutherford, Jr., M.D., reviewed the record and found Ashton capable of performing a limited range of light work. R. 100–102. Specifically, Dr. Rutherford found that Ashton can stand and walk for about six hours in an eight-hour day and can sit for about six hours. She can lift and carry twenty pounds occasionally and ten pounds frequently. She can frequently climb, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to noise, vibrations, pulmonary irritants, and hazards. Id.

Similarly, on December 20, 2019, state agency medial physician David Bristow, M.D., reviewed Ashton's records and agreed with Dr. Rutherford's finding and limitations. R. 118–120. The ALJ found these opinions generally persuasive as they were largely consistent with the evidence on the record. R. 25.

Regarding Ashton's mental health, on December 20, 2019, state agency psychologist Eric Oritt, Ph.D., reviewed Ashton's records. R. 120–122. Dr. Oritt found that Ashton was moderately limited in concentration and persistence and social interactions but can complete one to two step commands involving occasional contact with the public and coworkers. R. 121–122. Further, Dr. Oritt determined that Ashton can handle the basic mental demands of simple tasks

7

and routine or repetitive work. Id. The ALJ found Dr. Oritt's opinion of Ashton's mental impairments generally persuasive as it was consistent with the evidence on the record. R. 26.

On August 21, 2019, state agency psychologist Joseph Leizer, Ph.D. reviewed Ashton's records and agreed with Dr. Rutherford's recommended work limitations. R. 102–104. Dr. Leizer also found that Ashton is likely capable of performing some tasks throughout a typical workweek. The ALJ determined that Dr. Leizer's opinion was partially consistent with the evidence in the record, and that the portion regarding "performing some tasks throughout a typical workweek" was vague. R. 26. Accordingly, the ALJ did not find it entirely persuasive.

### B.  RFC Finding

Ashton asserts that the ALJ erred by failing to account for her bathroom use and migraines in the RFC. Further, Ashton argues that the RFC finding failed to explain the link between the Ashton's limitation to non-production work and her mental limitations. However, the evidence cited by Ashton was not ignored by the ALJ, and her argument amounts to a disagreement with the ALJ's RFC determination, essentially asking the court to reweigh the evidence.

Ashton argues that the ALJ failed to account for her migraines and for the diarrhea and bathroom use associated with her Crohn's disease. Pl. Br. at 9–15, Dkt. 12. Contrary to Ashton's argument that the RFC finding contains "no accounting whatsoever for her frequent bathroom use," the record reflects that the ALJ did consider such evidence during the relevant period and found that it did not support finding Ashton disabled. R. 21, 58, 59, 1507, 1452.

The ALJ noted Ashton's testimony that she cannot maintain fulltime employment because she has Crohn's disease and that "the condition is not well controlled, so she must use the bathroom eight to nine times per day." R. 22. However, the ALJ found that Ashton's

statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Id. Specifically, the ALJ noted that Ashton uses her prescribed injected immunosuppressant medication consistently and attended regular appointments with a gastroenterologist; however, she also frequently sought emergency treatment, and complained of persistent symptoms, such as abdominal pain, diarrhea, and constipation. Id. The ALJ noted that Ashton's examinations were routinely normal, aside from lower abdominal tenderness and occasional hypoactive bowel sounds. Further, the ALJ noted that since November 2019, Ashton's colonoscopies and biopsies did not show that her Crohn's disease was active. Id. The ALJ acknowledged that Ashton's abdominal pain and other symptoms associated with Crohn's disease limit her to light exertional work, and impact her ability to stand, walk, perform postural tasks, and interact with certain environmental conditions. Id.

      The ALJ explained the inconsistencies in Ashton's record and testimony and the reasons for her finding that the objective evidence did not fully support Ashton's statements. The ALJ noted Ashton's testimony that her symptoms prevent her from working because she needs to use the bathroom eight or nine times per day, and she struggles to complete even routine daily tasks. R. 23. The ALJ determined that the objective evidence did not fully support those statements, noting that Ashton's physical examinations were unremarkable, aside from tenderness in her abdomen and lumbar region, and that she rarely displayed diminished reflexes or sensation in her legs, or hypoactive bowel sounds. The ALJ noted that Ashton's providers did not describe abnormalities in her gait or note that she appeared uncomfortable during appointments. Id. The ALJ recognized that Ashton has received regular treatment for her impairments, but noted that the treatment has been conservative, consisting mainly of oral or injected medications and

9

physical therapy. Id. The ALJ noted that Ashton's providers have not recommended that she pursue more aggressive methods of treatment to manage her conditions. The ALJ also noted that Ashton "is able to care for her personal needs, do chores around the house, go shopping, attend church, and visit her mother. Further, she has told providers that she enjoys swimming, playing volleyball, and walking, and has not indicated that she must use the bathroom frequently throughout the day." R. 23. Overall, the ALJ acknowledged that Ashton's physical impairments cause some symptoms, but determined that "the objective findings contained in the record, the conservative care she has received, her statements to providers for treatment purposes, and her admitted ability to perform a variety of daily tasks all suggest that these symptoms are not as severe or as limiting as she claims." R. 23–24. Accordingly, the ALJ accommodated Ashton's diarrhea and frequent bathroom use, along with her other Crohn's disease associated symptoms, and found that her physical impairments limit her to work at the light exertional level, and further affect her abilities to stand, walk, perform postural tasks, and interact with certain environmental conditions. R. 22.

The ALJ also accounted for Ashton's migraines in the RFC analysis. R. 23. The ALJ noted that Ashton discussed her migraine headaches with her primary care provider on multiple occasions, takes medications to control them, and met with a neurologist twice. R. 23, See e.g., 854–856, 1235–1238, 1268–1270, 1485–1486, 1495–1496, 1605–1606, 1608–1610. The ALJ noted that, despite this care, Ashton complained of persistent migraines that occur two to three times a month. R. 23. Drs. Rutherford and Bristow, whose opinions the ALJ found persuasive and consistent with the record, determined that the Ashton's migraines require her to avoid concentrated exposure to noise, vibrations, pulmonary irritants, and hazards. R. 100–102, 118–120. The ALJ adopted these restrictions in the RFC to accommodate Ashton's migraines.

10

Ashton also argues that the ALJ failed to explain how the RFC restriction to a non-production environment properly accounts for Ashton's moderate limitations in concentration, persistence, and pace. Pl. Br. at 15–18, Dkt. 12.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The decision in Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to

11

include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitation in concentration, persistence, or pace, Ashton can perform the basic mental demands of light non-production work, with the specified accommodations. R. 21. Further, the ALJ explained how Ashton's moderate limitations in concentration, persistence, or pace, interacting with others, and adapting or managing oneself did not translate into a limitation in the RFC beyond a restriction to unskilled work at a non-production pace and that she can occasionally interact with coworkers and the public. Id.

Contrary to Ashton's argument, the ALJ explained her determination that Ashton could maintain concentration, persistence, and pace to perform unskilled work at a non-production pace. Id. Specifically, the ALJ defined "non-production pace" as an assembly line, in two-hour increments to complete an eight-hour day. Id. The ALJ noted that Ashton's bipolar disorder,

12

borderline personality disorder, and PTSD, prevent her from performing complex work activities. R. 25. The ALJ found Dr. Oritt's conclusion that Ashton can complete one to two-step commands involving occasional contact with the public and co-workers to be consistent with the evidence. Id. The ALJ recognized Ashton's testimony that she has trouble following instructions, remembering information, and making decisions, but also found that Ashton's examinations rarely revealed abnormalities in her memory. Id. The ALJ noted that Ashton's cognitive functioning appears normal to her clinicians, and she can care for her personal needs, perform chores around the house, shop and manage her own medical care. The ALJ reasoned that these activities require Ashton to follow instructions or procedures, remain on task, make decisions, work at an appropriate pace, and sustain some degree of attention and concentration. Thus, the ALJ determined that Ashton can perform simple work activities; however, the ALJ specifically noted that, "given her complaints, she should not perform tasks that are completed at a production, or assembly line, pace." R. 25.

Accordingly, the ALJ adequately supported her finding that Ashton could sustain work activity over the course of an eight-hour workday, included Ashton's moderate impairments in the hypothetical questions to the vocational expert ("VE), and explained the RFC finding in her ruling. The ALJ asked the VE to consider "an individual of the claimant's age, education, with no past relevant work [who] . . . is able to maintain concentration, persistence, and pace to perform unskilled work at the non-production pace in two-hour increments in order to complete an eight-hour work day"… "Is able to interact with co-workers and the public occasionally." [6]

---

[6] Ashton argues that the ALJ erroneously relied on the vocational experts experience to reconcile the conflict between the expert's testimony on standing, walking, or pace of work and the DOT. R. 62–64. However, the ALJ did not rely solely on the vocational expert's professional experience to explain the conflict. Specifically, the ALJ stated that "although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert stated that his testimony conflicts with the Dictionary of Occupational Titles, which does not address the specific hypothetical restrictions on standing, walking, or pace of work. He further testified that this deviation is based on his

13

R. 62. The ALJ is not required to pose hypothetical questions to the VE relating to impairments not supported by the record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

Overall, I find that the ALJ adequately explained how the RFC restriction to non-production work accommodates Ashton's moderate impairment with concentration, persistence or pace. See Richardson v. Berryhill, No. 5:15-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) (because ALJ "provided ample discussion of how [a plaintiff's] mental impairments impact[ed] her ability to perform work-related tasks," RFC that limited a plaintiff to a nonproduction pace passed muster "because the ALJ contextualized and explained how he reached his conclusion[.]").

The role of this court is not to reweigh the evidence, as Ashton urges, or substitute its judgment for the ALJ, but instead determine whether the ALJ's decision is supported by substantial evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's reasoning is supported by the opinions of the state agency psychologists and the ALJ's consideration of the record. This court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. As such, I conclude that substantial evidence supports the ALJ's conclusions regarding Ashton's RFC determination.

---

professional experience working with employers in the competitive workforce. The vocational expert's testimony does not conflict with agency policy, and in light of his experience, the undersigned finds his explanation, and his testimony, persuasive." R. 27. Thus, for the reasons explained this Report and Recommendation, the ALJ did not make an error in the RFC finding.

## CONCLUSION

I **RECOMMENDED** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Ashton's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 22, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge